Argued and submitted December 16, 1987, affirmed on petition and cross-petition
August 24, 1988

In the Matter of the Compensation of
William R. Rose, Claimant.

## CASCADE CORPORATION,
*Petitioner - Cross-Respondent,*

*v.*

## ROSE,
*Respondent - Cross-Petitioner,*

*and*

## CPP SECURITY SERVICE et al,
*Respondents.*

(WCB 84-12425, 84-09803; CA A41753)

759 P2d 1127

Jerald P. Keene, Portland, argued the cause for petitioner - cross-respondent. With him on the briefs was Roberts, Reinisch & Klor, P.C., Portland.

Robert K. Udziela, Portland, argued the cause for respondent - cross-petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Stephen R. Frank, Portland, argued the cause for respondents. With him on the briefs was Tooze, Marshall, Shenker, Holloway & Duden, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Cascade Corporation (Cascade) seeks review of a Workers' Compensation Board order, issued in an ORS 656.307 proceeding, holding it responsible for claimant's aggravation claim. Claimant cross-petitions for review of the Board's reversal of the referee's award of insurer-paid attorney fees. On *de novo* review, we affirm.

In April, 1982, claimant suffered a compensable injury to his right knee while employed by Cascade. His treating physician, Dr. Wells, repeatedly advised that he undergo arthroscopic surgery, but Cascade denied the request for surgery. In June, 1984, during a hearing on claimant's appeal from an order awarding him no permanent partial disability for his knee, Cascade withdrew its denial of the surgery. Claimant was awarded 20 percent permanent partial disability for his knee.

In July, 1984, while employed by CPP Security System, claimant again injured his right knee. He was treated by Dr. Kiest, an orthopedic surgeon, who recommended arthroscopy, which is used as a diagnostic tool and for treatment. He performed the arthroscopy and a contemporaneous medial meniscectomy to repair a chronically torn medial meniscus. Both Kiest and Wells, who viewed a videotape of the procedure, concluded that the 1984 injury necessitated the arthroscopy for diagnosis but that the meniscectomy was related only to the condition which resulted from the 1982 injury. Kiest noted that it was "nearly criminal" that the arthroscopy had not been performed in 1982 at the time of claimant's earlier injury, because it could have improved his chronic condition and lessened his degenerative problems. Both doctors agreed that the 1984 injury had caused bleeding and bruising but that it was a separate injury which did not contribute to the degenerative condition of the knee. As explained by Kiest:

> "It is rare that we can be as exact as I was in this. If the cartilage tears occurred recently, and by that I'd mean within a six month period of time, why the joint surfaces around the cartilage are not beat up. The cartilage hasn't been flipping back and forth and tearing up the joint surfaces, and all you will see will be torn cartilage itself * * *. The presence of frayed cartilage indicates that it has been there for some period of

time, and the presence of wearing on the joint surfaces indicates it's been there some period of time."

CPP Security denied the claim on August 21, 1984, asserting that Cascade was the responsible employer. Cascade denied responsibility contending that claimant had suffered a new injury, not an aggravation of his 1982 injury. CPP Security subsequently amended its denial to accept the knee condition solely for the internal bleeding and bruising as a non-disabling injury. Claimant filed requests for hearing on each of the denials. On December 5, 1984, the Workers' Compensation Department, under ORS 656.307, ordered that claimant be paid compensation and directed that a hearing be held to determine responsibility for his knee condition and to resolve all the issues.

The referee concluded that the 1982 and 1984 injuries were distinct enough that they could be segregated causally and for the purpose of assigning responsibility. Accordingly, he allocated to CPP Security responsibility for the 1984 injury, including the arthroscopy as a diagnostic procedure, six weeks of temporary total disability compensation and any permanent disability compensation resulting from that injury that might be assessed on claim closure. The referee held Cascade responsible for the meniscectomy, any temporary disability compensation in excess of six weeks after July 21, 1984, and any permanent disability resulting from the aggravation that might be assessed on claim closure. He also awarded attorney fees of $750 from each insurer. The Board affirmed the referee's allocation of responsibility, rendered each attorney fee from $750 to $500 and reversed the portion of the order providing that the attorney fees were to be insurer-paid.

■ Cascade argues that, before his 1984 injury, claimant's right knee had stabilized and that the new injury necessitated the surgery. Therefore, Cascade contends, the "last injurious exposure" rule should apply and the Board's apportionment of liability was improper. Under that rule, in a successive injury context, if an on-the-job injury at a prior employment and a second injury at a later employment each materially contribute to a disability, the later employer is liable. However, as explained in *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 675 P2d 1044 (1984):

"The last injurious exposure rule is not intended to transfer liability from an employer whose employment caused a disability to a later employer whose employment did not. Once a worker proves that the disability is work-related, he or she need not prove that any one employment caused the disability. The rule accomplishes that and makes liable the last employer whose conditions of employment might have caused the disability. However, the rule does not prevent a worker from proving that an earlier employment caused the disability; nor does it prevent an employer from proving that the claimant's disability was caused by a different employment or that the disability did not arise from any work-related injury."

On *de novo* review, we find that claimant's 1984 injury at CPP Security did not independently contribute to his chronic degenerative knee condition. Rather, the condition resulted solely from his 1982 injury. The injuries are distinct enough that they can be segregated in terms of causation and responsibility. The Board properly apportioned responsibility for the two injuries. Accordingly, we affirm the Board's order.

Claimant cross-petitions for review of the Board's reversal of the referee's award of insurer-paid attorney fees, arguing that, before the ORS 656.307 order, his attorney provided services directed at overturning the denials of compensation and, therefore, attorney fees should be insurer-paid under ORS 656.386, which provides, in pertinent part:

"(1)   In all cases involving accidental injuries where a claimant finally prevails in an appeal to the Court of Appeals or petition for review to the Supreme Court from an order or decision denying the claim for compensation, the court shall allow a reasonable attorney fee to the claimant's attorney. In such rejected cases where the claimant prevails finally in a hearing before the referee or in a review by the board itself, then the referee or board shall allow a reasonable attorney fee. Attorney fees provided for in this section shall be paid by the insurer or self-insured employer.

"(2)   In all other cases attorney fees shall continue to be paid from the claimant's award of compensation except as otherwise provided in ORS 656.382."

Attorney fees in workers' compensation cases may be awarded only as authorized by statute. *Forney v. Western States Plywood,* 297 Or 628, 686 P2d 1027 (1984). In *Petshow*

*v. Farm Bureau Ins. Co.,* 76 Or App 563, 710 P2d 781 (1985), *rev den* 300 Or 722 (1986), we held that ORS 656.386(1) does not authorize attorney fees for a claimant in an ORS 656.307 proceeding if the claimant's participation is only nominal. Although claimant's attorney did initiate review of the claim denials and performed services important in obtaining an ORS 656.307 hearing, the statute does not authorize insurer-paid attorney fees for those services, and claimant had no more than a nominal role at the hearing.

Affirmed on petition and on cross-petition.